**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 51527**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, February 2025 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: February 26, 2025** |
| | ) | |
| **KELLEN ALEXANDER GREWELL,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Mark T. Monson, District Judge.

The district court order denying the motion to suppress is <u>reversed</u>, the judgment of conviction is <u>vacated</u>, and the case is <u>remanded</u> for proceedings consistent with this opinion.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Jacob L. Westerfield submitted argument on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen submitted argument on the briefs.

_____

PER CURIAM.

Kellen Alexander Grewell appeals his judgment of conviction for possession of a controlled substance, asserting that the district court erred in denying his motion to suppress. The State concurs with Grewell's position. Because we agree with the parties that the district court erred in denying Grewell's motion to suppress, we reverse the order denying Grewell's motion and vacate Grewell's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of July 25, 2022, law enforcement received a report from the Clearwater River Casino of a suspicious vehicle in its parking lot. Corporal Tyler Bollman of the Nez Perce County Sheriff's Office responded to the casino in his patrol vehicle and located the reported vehicle. At approximately the same time, Deputy Jason Brown, also of the Nez Perce County Sheriff's Office, arrived in a separate patrol vehicle. Neither patrol vehicle was displaying

emergency lights or sirens. The patrol vehicles parked in a manner that did not block the suspect vehicle from leaving. Corporal Bollman approached the vehicle's driver side while Deputy Brown approached the passenger side.

A male, later identified as Grewell, was sitting in the driver's seat. A female, later identified as Shayla Umphenour, was seated in the passenger seat. A minor child was in the backseat. Upon making contact with the vehicle's occupants, Corporal Bollman explained that he was responding to a report of a suspicious vehicle and Grewell and Umphenour explained that they were waiting on a money transfer so that they could rent a hotel room. Corporal Bollman requested and received identification from both Grewell and Umphenour and returned, with the identification documents, to his patrol vehicle to request a license and warrant check from dispatch. After submitting the license check through dispatch, Corporal Bollman returned to the vehicle and continued speaking to Grewell and Umphenour. During this conversation, Corporal Bollman did not return the identification documents to either Grewell or Umphenour.

Several minutes into this conversation, Umphenour explained to Deputy Brown that she believed that the money transfer had been completed. Deputy Brown asked Umphenour about a piece of tin foil located at her feet. Umphenour showed the tin foil to Deputy Brown who questioned her regarding track marks he observed on the tin foil, which he asserted were indicative of smoking fentanyl. Umphenour immediately crumpled up the foil. At approximately the same time, Corporal Bollman observed a straw with a green rubber tube on the end of it, which he recognized as drug paraphernalia.

Corporal Bollman ordered Grewell and Umphenour out of the vehicle. The minor child was also removed from the vehicle. Corporal Bollman placed Grewell under arrest for possession of drug paraphernalia. In addition to the paraphernalia already observed, a search of the vehicle pursuant to the arrest revealed a suspected fentanyl pill and other items of contraband. Ultimately, the State charged Grewell with felony possession of methamphetamine, pursuant to Idaho Code section 37-2732(c)(1); felony injury to child, pursuant to Idaho Code section 18-1501(1); and misdemeanor possession of drug paraphernalia, pursuant to Idaho Code section 37-2734A(1).

Grewell filed a motion to suppress, asserting that he was seized without reasonable suspicion during the encounter with the officers. The district court held a hearing on Grewell's motion at which Corporal Bollman testified. The district court also accepted the stipulation of the parties to admit the dashcam video from Corporal Bollman's patrol vehicle, the dashcam video

2

from Deputy Brown's patrol vehicle, and Deputy Brown's bodycam video. Following the hearing, the parties filed written arguments, and the district court ultimately issued a written opinion and order denying Grewell's motion.

In its order, the district court concluded that the initial contact between Grewell and the officers was consensual. It also concluded that a limited detention occurred "when Corporal Bollman sought the parties [sic] identification," and it found that during this limited detention, "Corporal Bollman observed the straw with the green tube, which based on his training and experience, appeared to be drug paraphernalia," and that simultaneously Deputy Brown observed the track marks on the tin foil shown by Umphenour. Relying on *State v. Couch*, 169 Idaho 852, 859, 504 P.3d 388, 395 (Ct. App. 2021), the district court concluded that the "limited detention" following Corporal Bollman's check on Grewell's identification with dispatch "did not run afoul of the Fourth Amendment." The district court further concluded that the observation of suspected paraphernalia "gave rise to reasonable suspicion that the occupants of the car had been ingesting illegal drugs." Consequently, the district court determined that "based on the totality of the circumstances, the officers did not violate [Grewell's] Fourth Amendment right to be free from search and seizure" and denied Grewell's motion to suppress.

Subsequently, pursuant to a plea agreement, Grewell entered a conditional guilty plea to the charge of possession of a controlled substance, retaining his right to appeal the denial of his motion to suppress. In return, the State dismissed the remaining charges. Grewell timely appeals.

## II. STANDARD OF REVIEW

When this Court reviews a trial court's denial of a motion to suppress, we employ a bifurcated standard of review. *State v. Ramos*, 172 Idaho 764, 770, 536 P.3d 876, 882 (2023). "This Court accepts 'the trial court's findings of fact unless they are clearly erroneous' but freely reviews 'the trial court's application of constitutional principles to the facts found.'" *Id.* (quoting *State v. Howard*, 169 Idaho 379, 381, 496 P.3d 865, 867 (2021)).

## III. ANALYSIS

On appeal, Grewell asserts that the district court erred in denying his motion to suppress. Specifically, Grewell argues that he was "unreasonably seized under the Fourth Amendment when Corporal Bollman took and retained his driver's license in the absence of reasonable suspicion of criminal activity" and that the district court misapplied *State v. Couch*, 169 Idaho 852, 504 P.3d 388 (Ct. App. 2021), in concluding otherwise. Grewell contends that, pursuant to *Couch*, an

3

officer's retention of an individual's identification constitutes a seizure, which must be supported by reasonable suspicion. Grewell argues that, since the district court concluded the officers did not have information giving rise to reasonable suspicion of criminal activity until several minutes after the seizure was initiated, the initial seizure was unreasonable, and any evidence found after the unreasonable seizure must be suppressed. In a motion filed in lieu of a respondent's brief, the State concurs with Grewell's analysis and concedes that "the district court erred by denying the motion to suppress." We agree.

In *Couch*, the Court of Appeals considered a similar factual situation wherein law enforcement responded to an anonymous report that people in two different vehicles had been observed "smoking something off of tin foil" while parked in a parking lot. 169 Idaho at 855, 504 P.3d at 391. The officer approached a vehicle generally matching the description of one of the reported vehicles and contacted the woman seated in the driver's seat. *Id.* The officer requested and received the woman's driver's license, which identified her as Mildred Couch. *Id.* The officer took the driver's license and, after obtaining identification from the occupants in the other vehicle, gave all three documents to another officer to run through dispatch. *Id.* While awaiting a response from dispatch, a canine unit arrived and alerted to the presence of drugs in Couch's vehicle. *Id.* A subsequent search of Couch's vehicle and person revealed "two syringes, one of which contained methamphetamine residue, and a glass pipe." *Id.* The State charged Couch with "possession of a controlled substance and possession of drug paraphernalia." *Id.* Couch filed a motion to suppress, which was denied by the district court. *Id.* at 855–56, 504 P.3d at 391–92. Thereafter, Couch entered a conditional guilty plea to possession of a controlled substance and timely appealed the denial of her motion to suppress. *Id.* at 856, 504 P.3d at 392.

On appeal, the Court of Appeals, after discussing various relevant precedent, held that

> [r]ead together, United States Supreme Court jurisprudence and Idaho precedent indicate that law enforcement may, consistent with the Fourth Amendment and without reasonable suspicion, contact an individual, request identification, *and* check the identifying information through dispatch so long as that encounter is not initiated for the sole purpose of checking identification. However, reasonable suspicion is required once law enforcement prevents someone from leaving by retaining that person's identification.

*Id.* at 859, 504 P.3d at 395. Applying this reasoning to the facts, the Court of Appeals concluded:

> [T]he officer could approach Couch and ask for identification during the course of that interaction and doing so did not run afoul of the Fourth Amendment. However, once the officer retained Couch's driver's license by taking it, leaving Couch's

4

presence, and giving it to another officer to run a license check, Couch was detained because a reasonable person in her position would not feel free to leave. Because there was a detention at that point, reasonable suspicion was required.

*Id.* The Court of Appeals continued to conclude that neither the anonymous report of drug activity nor any facts observed by the officer prior to detaining Couch gave rise to a reasonable suspicion of criminal activity. *Id.* at 859–62, 504 P.3d at 395–98. Consequently, the Court of Appeals reversed the district court's order denying Couch's motion to suppress and vacated her judgment of conviction. *Id.* at 862, 504 P.3d at 398.

Here, the district court concluded that a "limited seizure" of Grewell occurred when Corporal Bollman retained Grewell's driver's license and found that, during this "limited seizure," officers observed the suspected paraphernalia that "gave rise to reasonable suspicion that the occupants of the car had been ingesting illegal drugs." Grewell does not challenge this portion of the district court's analysis. However, the district court's legal conclusion that this "limited seizure" did not "run afoul of the Fourth Amendment" was erroneous because the district court's analysis ignores the explicit holding in *Couch* that, when an officer retains an individual's identification, a seizure requiring reasonable suspicion has occurred. 169 Idaho at 859, 504 P.3d at 395; *see also State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017) (officer's retention of defendant's license "resulted in an unlawful detention"). Because the facts giving rise to reasonable suspicion of criminal activity were not observed until several minutes after Grewell was seized, his seizure was unreasonable. Consequently, Grewell's motion to suppress should have been granted.

### IV.   CONCLUSION

We reverse the district court's denial of Grewell's motion to suppress, vacate Grewell's judgment of conviction, and remand to the district court for further proceedings consistent with this opinion.

5